## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. 3:07CR433–HEH |
| DANNY DAMON SMITH, ) | |
| a.k.a. "Duke," ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION
**(Denying Defendant's Omnibus Motion to Declare the Federal
Death Penalty Act Unconstitutional and for Miscellaneous Other Relief)**

On July 22, 2008, a federal grand jury returned a four-count Superseding

Indictment ("Indictment") against the defendant, Danny Damon Smith.  Only Count One,

charging retaliation against an informant resulting in murder, in violation of 18 U.S.C. §

1513(a)(1)(B), and Count Two, charging use of a firearm causing the death of another, in

violation of 18 U.S.C. §§ 924(c), 924(j) and (2), are pertinent to the immediate motions.

The Indictment also included a Notice of Special Findings, amplifying the allegations in

Counts One and Two.  An Amended Notice of Intent to Seek a Sentence of Death

("Death Notice") was filed subsequently by the United States.  If convicted on Count One

or Two, the defendant faces a possible penalty of death.  In the motion at hand, the

defendant challenges the constitutionality of the Federal Death Penalty Act ("FDPA"),

which establishes the procedural infrastructure for hearing and deciding death penalty

cases.

Both parties have filed extensive memoranda presenting their respective positions on the issues raised. The Court heard oral argument on July 31, 2008. For the reasons detailed below, the Court finds the FDPA constitutional, as applied to the facts and circumstances presently before the Court. The Court will also deny the defendant's motions to strike the Death Notice and dismiss the statutory and non-statutory aggravating factors.

The defendant advances a number of alleged constitutional deficiencies in the FDPA and associated filings. He maintains that the FDPA fails to meet the Sixth Amendment requirements articulated in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002); that the Death Notice and Indictment are constitutionally deficient under the Fifth and Sixth Amendments; that the Death Notice fails to provide adequate notice as required by the Constitution and 18 U.S.C. § 3593(a); that the government improperly alleges all four statutorily-required mental states in the Death Notice; that the alleged statutory aggravating factors are too vague to effectively channel the discretion of the sentencing jury; and that the alleged non-statutory aggravating factors are constitutionally unreliable, fail to guide the jury's discretion, and should be excluded from the penalty phase because their probative value is far outweighed by the danger of unfair prejudice and confusion.

Although the defendant's arguments are eloquently framed, his supporting authority is sparse. As the government hastens to point out, almost all of the defendant's

arguments have been uniformly rejected by various federal appellate courts.

The Court will turn first to the defendant's contention that the FDPA fails to meet the Sixth Amendment requirements announced by the United States Supreme Court in *Ring*.[1] Among the perceived constitutional shortcomings is the failure of the FDPA to require that the weighing of factors in the final stage of the sentencing process be decided beyond a reasonable doubt. In order to establish eligibility for a death sentence, the United States must demonstrate that the defendant acted with at least one of the statutorily-required *mens rea* listed in 18 U.S.C. § 3591 and the existence of at least one of the statutory aggravating factors enumerated in 18 U.S.C. § 3592(c). Reviewing courts agree that the requisite mental state and the finding of at least one statutory aggravating factor are the functional equivalent of "elements," because they are necessary to impose a sentence of death. Consequently, these core factors must be proven beyond a reasonable doubt. *See Jones v. United States*, 526 U.S. 227, 251–52, 119 S. Ct. 1215, 1228 (1999); *United States v. Higgs*, 353 F.3d 281, 298–99 (4th Cir. 2003), *cert. denied*, 543 U.S. 999, 125 U.S. 627 (2004).

Defendant's motion addresses the third stage of the capital sentencing scheme established in 18 U.S.C. § 3593. In this so-called "selection stage," the jury must find

---

[1] In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Supreme Court held that the Sixth Amendment mandated that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be presented to a jury and proved beyond a reasonable doubt." *Id*. at 490, 120 S. Ct. at 2363. This same fact-finding requirement was extended to capital sentencing procedures in *Ring*.

that the aggravating factors either outweigh the mitigating factors sufficiently to justify a sentence of death, or that the aggravating factors, standing alone, justify a death sentence. He argues that because the assessment of aggravating factors and weighing of mitigating factors are essential prerequisites to the sentence of death, they should be accorded the same legal stature as elements. Therefore, in his view, the jury's findings in this weighing process must be beyond a reasonable doubt.

Procedurally, capital sentencing is essentially a multi-step narrowing process culminating in the exercise of individualized judgment. The initial findings of *mens rea* and at least one statutory aggravating factor render the defendant what is commonly referred to as "death-eligible." The ultimate decision, however, as to whether the defendant receives a death sentence is far more encompassing. As the United States Court of Appeals for the Tenth Circuit pointed out in *United States v. Barrett*, "the jury's decision that the aggravating factors outweigh the mitigating factors is not a finding of fact. Instead, it is a 'highly subjective,' 'largely moral judgment' 'regarding the punishment that a particular person deserves . . . .'" *United States v. Barrett*, 496 F.3d 1079, 1107 (10th Cir. 2007) (citing *Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7, 105 S. Ct. 2633, 2645 n.7 (1985)). Once a jury has found a defendant to be death-eligible, the fact-finding process is concluded.

The Tenth Circuit further held in *Barrett* that "we hold that the Sixth Amendment does not require a jury to be instructed that it must find that the aggravating factors

4

outweigh the mitigating factors beyond a reasonable doubt." *Id*. at 1108; *see also United States v. Fields*, 483 F.3d 313, 346 (5th Cir. 2007). The weighing process mandated by 18 U.S.C. § 3593(e) is not the equivalent of "elemental fact" finding. *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005).

This Court will join other reviewing courts in declining to elevate the weighing process to an essential element requiring proof beyond a reasonable doubt.

The defendant next urges the Court to dismiss the Death Notice—presumably striking the death penalty from the case—because the government has not obtained an indictment consistent with the requirements of the Fifth and Sixth Amendments. Defendant's underlying contention is that the Indictment does not state that the grand jury intended to return an indictment charging a capital offense. The defendant cites language in the Fifth Amendment of the Constitution that provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," and construes this phrase as requiring the grand jury to make a specific, or at least implied, finding that an offense and its perpetrator are death worthy. There is no credible support for such an expansive interpretation of the Indictment Clause.

The defendant's argument that he has a constitutional right to have the grand jury independently approve of the death penalty before an indictment can be returned for a

capital offense runs counter to established jurisprudence.[2]  The language of the Fifth Amendment at issue has been historically interpreted to require that any felony offense, including an offense carrying the death penalty, must be presented to a grand jury for indictment prior to trial on the merits.  Determinations as to sentencing and punishment have never been within the province of a grand jury.  Congress delegated the decision to seek the death penalty to the Executive Branch of government and the determination of whether the death penalty is appropriate in a given case to the trial jury.  The defendant has advanced no persuasive reason to reverse the course of history or modify settled rules of law.

On a related front, the defendant contends that the Indictment is constitutionally deficient because it fails to allege all necessary elements of a capital crime.  Specifically, he argues that it neither contains a recitation of the non-statutory factors alleged in the Death Notice nor the mitigating factors.  He asserts that without this information, the grand jury is unable to weigh the alleged factors and determine independently if the death penalty is justified.  The defendant's reasoning flows from a misconception of the mission of a grand jury.

Again, the defendant invites the Court to significantly widen the role of the grand jury.  To engage in the weighing process urged by the defendant, the grand jury would be

---

[2]A grand jury is vested with broad investigatory powers, but its mission is narrow—to decide if probable cause exists to support specific criminal charges.  *Blair v. United States*, 250 U.S. 273, 280, 39 S. Ct. 468, 470 (1919).

required to hear evidence from both the prosecution and the defense. It would convert the grand jury review process into an adversarial setting, contrary to precedent and its constitutional underpinnings. As the Eighth Circuit aptly observed in *United States v. Purkey*, "it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause." *Purkey*, 428 F.3d at 750.

Moreover, the novel notion that the Indictment Clause of the Fifth Amendment requires that non-statutory factors relied upon by the United States at trial be included in the indictment was squarely rejected by the Fourth Circuit in *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003).

> The finding of a nonstatutory aggravator alone will not support imposition of the death penalty. Rather, the purpose of nonstatutory aggravators is to aid the factfinder in selecting the appropriate sentence from the available options, i.e., death or life imprisonment. . . . Because nonstatutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment.

*Id.* at 298–99; *see also United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006).

In the next facet of the defendant's Fifth Amendment challenge to the FDPA, he assumes the Act to be unconstitutional on the grounds argued above and maintains that the Act may not be saved by prosecutorial or judicial construction or redrafting. The defendant correctly notes that in the aftermath of *Ring v. Arizona*, proof of the defendant's mental state and at least one statutory aggravating factor are the functional

equivalent of elements of the offense of capital murder. It is now well settled that both must be proven beyond a reasonable doubt as a prerequisite to a death sentence. The defendant reasons further that if proof of his mental state and a statutory aggravating factor operate as elements of the offense of capital murder, they are required by the Fifth Amendment to be specifically alleged in the indictment. Because the FDPA contains no such pleading requirement, he maintains that the statute, as enacted by Congress, offends the Indictment Clause. Furthermore, the defendant argues that the government's practice of attaching its intent allegations and statutory aggravating factors to the Indictment as "Special Findings" is insufficient to cure the statutory deficiency.

The principle of law driving the defendant's argument is fundamentally correct. The government may not adopt ad hoc procedures inconsistent with the plain language of a statute to save it from being found unconstitutional. *United States v. Jackson*, 390 U.S. 570, 585, 88 S. Ct. 1209, 1218 (1968). The FDPA, however, makes no provision for a grand jury to return any specific findings with respect to the intent requirement or the statutory aggravating factors. It only requires the prosecution to provide the defendant with notice of aggravating factors within a reasonable time before trial. 18 U.S.C. § 3592(c). Unlike the language of the statute at issue in *Jackson*, nothing within the text or history of the FDPA precludes the government from including the intent or *mens rea* requirement and aggravating factors within the indictment. "[T]he mere fact that the statute is silent regarding whether sentencing factors must be treated as elements in order

8

for those factors to increase the defendant's statutory maximum sentence does not make the statute inconsistent with the constitutional requirement that those factors receive that treatment." *United States v. McAllister*, 272 F.3d 228, 233 (4th Cir. 2001). "Nothing prohibits the government from presenting aggravating factors to a grand jury and then, if appropriate, charging those aggravating factors in the indictment." *Brown*, 441 F.3d at 1367; *see United States v. Sampson*, 486 F.3d 13, 21–22 (1st Cir. 2007) ("No provision of the FDPA prohibits a grand jury from considering those factors necessary for imposition of a death sentence.").

The Court is therefore of the opinion that the prosecution's inclusion of the *mens rea* requirement and statutory aggravating factors in the Indictment, supplemented by the Death Notice, is neither inconsistent with the FDPA nor violative of the Indictment Clause of the Fifth Amendment. *See Brown*, 441 F.3d at 1367.

The defendant also contests the constitutionality of the relaxed standard for admissibility of evidence during the sentencing phase of a capital trial. Section 3593(c) provides, in pertinent part, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). As previously announced by this Court at oral argument, with the concurrence of counsel for both sides, the trial of the case will be divided into three stages—guilt, eligibility, and

9

selection. Section 3593(c) will govern only the final phase in which the jury will make the ultimate decision on punishment.

As applied to the selection stage, the defendant's position with respect to the Federal Rules of Evidence is contrary to the law in the Fourth Circuit and elsewhere. *United States v. Fulks*, 454 F.3d 410, 437–38 (4th Cir. 2006); *see also United States v. Barrett*, 496 F.3d 1079, 1109 (10th Cir. 2007); *United States v. Lee*, 374 F.3d 637, 648–49 (8th Cir. 2004). The Federal Rules of Evidence "do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the [Federal Rules of Evidence] in place." *United States v. Fell*, 360 F.3d 135, 144 (2d Cir. 2004). Indeed as a general matter, the Federal Rules of Evidence provide greater protection than that which is constitutionally mandated. *See, e.g., Dowling v. United States*, 493 U.S. 342, 352–54, 110 S. Ct. 668, 674–75 (1990); *see also United States v. Mitchell*, 502 F.3d 931, 979–80 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008).

The FDPA provides a capital defendant with constitutionally sufficient evidentiary protections. Even without the protections of the Federal Rules of Evidence, "it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial." *Fell*, 360 F.3d at 145.

The defendant counters that the Fourth Circuit's opinion in *Fulks*, concerning

10

application of the Federal Rules of Evidence to the sentencing stage, is at tension with the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). In *Crawford*, the Supreme Court held that the admission of testimonial out-of-court statements without the opportunity to cross-examine the declarant violates the Confrontation Clause. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. Whether this prohibition extends to the selection or final sentencing phase of a capital trial remains an open question. Therefore, out of an abundance of caution, consistent with the precepts of 18 U.S.C. § 3593(c),[3] the Court will enforce *Crawford* during the final sentencing stage. *See United States v. Jordan*, 357 F. Supp. 2d 889, 902–03 (E.D. Va. 2005).

The defendant next expresses concern that the FDPA denies him the presumption of innocence as to the sentencing elements of the offense, in violation of his right to due process. He reasons that because the jury has already found the defendant guilty prior to reaching the death-eligibility stage, its judgment is prejudiced in deciding whether the sentencing elements of *mens rea* and the statutory aggravating factors have been proven. The defendant suggests that the death-eligibility elements be decided in the guilt phase to avoid prejudice. Conspicuously absent from the defendant's memorandum of law is any authority to support this argument. Moreover, the defendant's position is at variance with the settled notion that the presumption of innocence dissipates upon conviction. *See Delo v. Lashley*, 507 U.S. 272, 278–79, 113 S. Ct. 1222, 1225–26 (1993). This Court is not

---

[3]Nothing in the language of 18 U.S.C. § 3593(c) inhibits the court's discretion to exclude unconstitutional evidence. The statute clearly survives facial constitutional attack.

persuaded that the absence of a presumption of innocence in the punishment phase of a criminal trial offends a defendant's Fifth Amendment right to due process.

The defendant shifts his focus next to the adequacy of the death penalty notice required by 18 U.S.C. § 3593(a)(2). This provision requires the government to file a notice within a reasonable time before trial, "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." The statute further states the generic categories of evidence which may constitute aggravating factors.

The defendant contends that the Special Findings in the Indictment and the Death Notice, filed in this case, are insufficient to satisfy the Due Process Clause of the Fifth Amendment, the notice provision of the Sixth Amendment, and the requirement of heightened reliability implicit in the Eighth Amendment of the Constitution. In his view, the notices fail to advise him of the nature of the allegations he faces with sufficient specificity to enable an adequate defense. For example, the defendant points out that the Death Notice fails to allege any factual basis for the mental state factors alleged. The Death Notice also articulates all four mental states contained in § 3591(a)(2), rather than electing a single theory of *mens rea*. Furthermore, the defendant categorizes the government's disclosure of non-statutory aggravating factors as impermissibly vague and factually deficient. In particular, the defendant points to the allegation that he has demonstrated an allegiance to and an active membership in a gang and engaged in a

12

pattern of serious criminal activity, including drug trafficking.

The Court begins its analysis of this challenge by noting that § 3593 refers to a "Notice by the government." 18 U.S.C. § 3593(a)(2). It requires no detailed disclosure of the factual basis underlying the government's proposed theory of *mens rea* or the statutory aggravating factors. The sufficiency of the notice required by § 3593(a)(2) is closely analogous to the requirements for an indictment set forth in Federal Rule of Criminal Procedure 7(c)(1). Rule 7(c)(1) directs that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Ordinarily, an indictment that tracks the statutory language is sufficient. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974). The Fourth Circuit has never required that an indictment contain the specific acts relied upon to prove a violation of a federal statute. *See United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1046–47 (4th Cir. 1987).

The standard for disclosure of non-statutory aggravating factors is even less exacting. A non-statutory factor alone will not support imposition of the death penalty. The purpose of non-statutory factors is to aid the fact-finder in selecting the appropriate sentence from the available options, death or life imprisonment. Because they do not increase the available punishment to which a defendant might be subjected, non-statutory factors are not required to even be alleged in the indictment. *United States v. Higgs*, 353 F.3d 281, 298–99 (4th Cir. 2003); *see also United States v. Lecroy*, 441 F.3d 914, 929–30

13

(11th Cir. 2006).

Much of the authority cited by the defendant in support of his request for specific underlying facts appears to focus more on adequacy of discovery than sufficiency of pleadings. The details sought by the defendant, to the extent appropriate, are attainable through the discovery process. *See United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999). The defendant presents no persuasive authority that an indictment for a capital crime or its statutorily-required adjunctive notices require the government to formally disclose the specific evidence upon which it intends to rely. In the case at hand, the defendant has received adequate notice of the essential facts which the government intends to prove when seeking the death penalty. That is all the Due Process Clause of the Fifth Amendment and the notice provision of the Sixth Amendment require. *Higgs*, 353 F.3d at 325; *Lecroy*, 441 F.3d at 929–30.

The defendant challenges the sufficiency of the Death Notice on one additional ground. He maintains that it improperly alleges all four of the gateway mental states contained in 18 U.S.C. § 3591(b)(2)(A–D). In his view, it is implausible that a person could simultaneously possess all four distinct mental states. Furthermore, he contends that to allow the government to allege all four statutory theories of *mens rea* could improperly influence the jury and skew the sentencing process in favor of death. The

14

defendant's strained logic is unpersuasive and his reliance on *United States v. Tipton*, 90

F.3d 861 (4th Cir. 1996), is misplaced.

This precise argument was rejected by the Fourth Circuit in *United States v.*

*Jackson*, 327 F.3d 273 (4th Cir. 2003).

> In arguing that the district court's submission of all four intent
> factors to the jury unconstitutionally skewed the weighing process toward
> the death penalty, Jackson relies on our decision in *United States v. Tipton*,
> 90 F.3d 861 (4th Cir. 1996), which held that the submission of four
> different intent factors to the jury for consideration as aggravating factors
> "runs a clear risk of skewing the weighing process in favor of the death
> penalty and thereby causing it to be imposed arbitrarily, hence
> unconstitutionally." *Id*. at 899. Jackson's reliance on *Tipton*, however, is
> misplaced. The prosecution in *Tipton* was for violation of 21 U.S.C. § 848,
> under which the jury is to consider the type of intent *as an aggravating*
> *factor* during the penalty phase of the trial. The court's reasoning in *Tipton*
> focused on the potential that submitting all four intent factors could skew
> *the weighing process* in favor of the death penalty by allowing cumulative
> findings.
>
> By contrast, Jackson was prosecuted under 18 U.S.C. § 924(j), for
> which the court uses the sentencing procedures outlined in 18 U.S.C. §§
> 3591-3598. To find the death penalty under these sections, the jury must
> first find one of the four types of intent *as a threshold matter*, and unless
> the jury finds one of the four types of intent, the defendant is not eligible for
> the death penalty. *See* 18 U.S.C. § 3591. Only after crossing this threshold
> does the jury reach the weighing of aggravating and mitigating factors. The
> findings regarding intent, therefore, play no role in the weighing process,
> which is done when the jury considers aggravating and mitigating
> circumstances. Thus, while the intent in *Tipton* actually operates as an
> aggravating factor, the intent under 18 U.S.C. § 3591 operates only as a
> threshold to reach the aggravating factors.
>
> Accordingly, we conclude that the district court did not err in
> submitting all four types of intent for the jury's consideration.

*Id*. at 300–01. The same reasoning governs the immediate case.

15

The defendant next places the adequacy of the alleged statutory aggravating factors under the judicial lens for review. The defendant urges the Court to find that the statutory aggravating factors alleged in this case invite an arbitrary and capricious imposition of a death sentence by failing to narrow the class of persons eligible for the death penalty and failing to channel the sentencer's discretion by clear and objective standards. In the defendant's view, the alleged statutory aggravating factors are too vague to supply clear guidance to the sentencing jury, thereby enabling an arbitrary and capricious death sentence.[4]

Drawing the specific language in question into sharper focus, the defendant claims that the "substantial planning and premeditation" aggravating factor is both duplicative and vague. The descriptive language in the statute reads, "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person." 18 U.S.C. § 3592(c)(9). Again, the Fourth Circuit rejected a similar challenge in *United States v. Tipton*. In *Tipton*, the defendant, as here, argued that the use of the word "substantial" as an antecedent modifier of "planning and premeditation" was not sufficiently precise in meaning to serve the discretion-channeling function constitutionally required for applying eligibility factors in capital sentencing. *Tipton*, 90 F.3d at 895. In upholding the constitutional sufficiency of the term in context of the

_____

[4]The defendant's argument that the statutory factors generally fail to narrow the class of defendants eligible for the death penalty has been rejected by courts confronted with the issue. *See, e.g., United States v. Fields*, 516 F.3d 923, 944–45 (10th Cir. 2008).

aggravating factor, the court noted that an aggravating factor "is not unconstitutional if it has some 'common sense core of meaning . . . that criminal juries should be capable of understanding.'" *Id.*

> The court in *Tipton* concluded that the
>
> aggravating factor's use of the word "substantial" to modify "planning and premeditation" does not render [the statutory aggravating factor] unconstitutionally vague, but instead, conveys with adequate precision a commonly understood meaning of "considerable," or "more than merely adequate," thereby ensuring that the [statutory aggravating factor] served sufficiently to channel the jury's discretion in assessing the eligibility for the death penalty.

*Id.* at 896; *accord United States v. McCullah*, 76 F.3d 1087, 1110–11 (10th Cir. 1996). In evaluating the narrowing effect of the statutory factors, the court in *Tipton* emphasized that the factors must be viewed in tandem with the gateway intent factors in 18 U.S.C. § 3591. *Tipton*, 90 F.3d at 897–99.

An assessment of the term "planning and premeditation" yields the same result. The defendant contends that this phrase fails to generally narrow the class of murders subject to the death penalty. In the defendant's view, every homicide entails some form of planning and premeditation. Even if this reasoning is sound, it avoids the equally obvious fact that homicides involve a broad spectrum of planning and premeditation. Some involve elaborate schemes, others a momentary flash of passion. All result in equal criminal responsibility, but some a higher grade of culpability than others. These terms are certainly not foreign to the average juror and require no further clarification. They

17

appropriately serve their constitutional function of narrowing the class of murders subject to the death penalty. *United States v. Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005).

Finally, the defendant shifts his attention to the alleged non-statutory aggravating factors authorized by § 18 U.S.C. 3592(c). The defendant contends that the non-statutory aggravating factors do not constitutionally limit and guide the discretion of the jury, which lends the process to arbitrary and capricious results, in violation of the Eighth and Fourteenth Amendments. The principal vice cited by the defendant is the unbridled discretion exercised by the prosecutor in crafting non-statutory aggravating factors. Aside from prescribing a notice requirement in 18 U.S.C. § 3593(a), the defendant points out that the statute provides no guidance as to what constitutes an appropriate non-statutory aggravating factor. Section 3593(c) provides that "at the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under § 3592." The statute also specifies that "information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The defendant further argues that the constitutional deficiency is compounded by the admissibility of uncharged and/or unadjudicated criminal activity in a capital sentencing hearing. This lack of evidentiary safeguards, in the defendant's view, lends itself to a

18

free-for-all atmosphere.

The defendant's claim that the submission of non-statutory aggravating factors at the penalty phase allows for the random and unguided imposition of the death penalty by jurors was carefully considered by the Fourth Circuit in *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). Following well-defined Supreme Court precedent, the court in *Higgs* noted that the use of non-statutory aggravating factors is appropriate after the jury finds the existence of at least one statutory aggravating factor that narrows the class of defendants eligible for the death penalty. *Higgs*, 353 F.3d at 294. Other courts have uniformly agreed. *See United States v. Fields*, 516 F.3d 923, 944 (10th Cir. 2008); *United States v. Sampson*, 486 F.3d 13, 46 (1st Cir. 2007). The Fourth Circuit further noted that the use of non-statutory aggravating factors serves only to individualize the sentencing determination. *Higgs*, 353 F.3d at 320. The courts in *Sampson* and *Higgs* also upheld the admissibility of uncharged criminal conduct during the selection phase of a capital case consistent with Federal Rule of Criminal Procedure 404(b). *Sampson*, 486 F.3d at 45–46; *Higgs*, 353 F.3d at 311. Such evidence falls within the ambit of a non-statutory factor and aids the jury in determining eligibility for the death penalty.

With respect to the application of the Federal Rules of Evidence to the sentencing phase, discussed in detail above, the Fourth Circuit has often restated the well-settled view of the Supreme Court that "in deciding whether a death-eligible defendant should receive the ultimate penalty, 'the jury [should] have before it all possible relevant

19

information about the individual defendant whose fate it must determine.'" *United States v. Fulks*, 454 F.3d 410, 437 (4th Cir. 2006) (quoting *Jurek v. Texas*, 428 U.S. 262, 276, 96 S. Ct. 2950, 2958 (1976)).  Despite the clear weight of authority to the contrary, the defendant maintains that the interplay between relaxed evidentiary rules and undefined standards for non-statutory factors invites arbitrary, random results.  This Court disagrees.

The FDPA provides a capital defendant with constitutionally sufficient evidentiary protections.  It vests the trial court with the authority to exercise its judgment and discretion to ensure that evidence is excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  That is all the Constitution requires.

For the foregoing reasons, the defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, to Dismiss the "Special Findings" from the Indictment and to Strike the Notice of Intent to Seek the Death Penalty will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: Aug. 8, 2008
Richmond, VA

20