IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. 3:07CR433 |
| DANNY DAMON SMITH, ) | |
| a.k.a. "Duke," ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Granting in part and denying in part the Motion for Judicial Determination of an Attorney-Client Privilege Issue and granting in part and denying in part the Motion to Quash Government Subpoena)

THIS MATTER comes before the Court on a Motion for Judicial Determination of an Attorney-Client Privilege Issue, filed by the United States on July 1, 2008, and Motion to Quash Government Subpoena, filed by Mufeed Said on July 29, 2008. The Defendant filed a response to the government's Motion, and the Court heard oral argument from the parties on July 31, 2008.

For the reasons stated herein, the Court will grant the Motion for Judicial Determination of an Attorney-Client Privilege Issue and deny the Motion to Quash Government Subpoena as they relate to Mr. Said's physical act of showing the Defendant the video in question. The Court will deny the Motion for Judicial Determination of an Attorney-Client Privilege Issue and grant the Motion to Quash Government Subpoena as they relate to any confidential communications made by the Defendant to Mr. Said during the course of their attorney-client relationship.

## I. STATEMENT OF FACTS

In June 2005, the Federal Bureau of Investigation, the Richmond Police Department, and the Virginia State Police began investigating the drug trafficking activities of an alleged street gang known as the Brickyard Boys. During the investigation, law enforcement agents recruited and developed several cooperating witnesses, who made controlled purchases of crack cocaine from targeted gang members. On July 10, 2005, Fannie "Patsy" Beard, a cooperating witness, made a controlled purchase of crack cocaine from the Defendant, Danny Damon Smith, while wearing a hidden video camera and microphone. The Defendant was arrested on September 16, 2008, and charged with distribution of a controlled substance in Richmond, Virginia ("state criminal charge").

The Defendant retained Mufeed Said to represent him on the state criminal charge. Mr. Said obtained discovery from the Richmond Commonwealth's Attorney, which included the video recording of the drug transaction between the Defendant and Ms. Beard ("the video"). On October 31, 2006, immediately before the Defendant's plea hearing on the state criminal charge, Mr. Said told Assistant Commonwealth's Attorney Tony Pham that the Defendant knew the identity of the informant because her address appeared on the video. This communication took place outside a courtroom in the Richmond Circuit Court out of the presence of the Defendant.

At his plea hearing, the Defendant entered a plea of nolo contendere to the state

criminal charge, but was allowed to remain on bond and start his sentence at a later date. On December 2, 2006, Ms. Beard was found dead in the Whitcomb Court area of Richmond. On July 22, 2008, a federal grand jury charged the Defendant in a five-count Superseding Indictment, which includes two capital offenses, with causing Ms. Beard's death. Trial is scheduled for September 8, 2008.

On July 1, 2008, the Government filed its Motion for Judicial Determination of Attorney-Client Privilege Issue, seeking a ruling from this Court allowing it to call Mr. Said as witness to testify at trial. In its Motion, the Government stated that it wished to call Mr. Said as a witness to testify that he showed the video to the Defendant and that the Defendant stated that he knew the identity of the informant after watching the video. The Government asserts that showing the Defendant the video does not constitute a communication between the Defendant and Mr. Said protected by the attorney-client privilege and that any statement the Defendant made to Mr. Said regarding his knowledge of Ms. Beard's identity after watching the video falls within the crime-fraud exception to the attorney-client privilege. Mr. Said filed a Motion to Quash the government's subpoena on July 29, 2008.

## II. ANALYSIS

### A. Scope of Attorney-Client Privilege

The attorney-client privilege protects confidential communications between a client and his attorney. *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir.

3

2005). To invoke the privilege, the person claiming its protection must be either the client of a person admitted to the bar of a court, who is acting as his lawyer, for the purpose of obtaining legal advice, or someone seeking such representation. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950)).

The client, not his attorney, holds the privilege, *In re Grand Jury Proceedings #5*, 401 F.3d at 250, and the burden of proving the applicability of the attorney-client privilege resides with the party asserting the privilege. *Jones*, 696 F.2d at 1072. "The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *Id.*

In this case, no dispute exists regarding whether an attorney-client relationship existed between the Defendant and Mr. Said at the time the Defendant saw the video. At that point, the Defendant had been arraigned on the state criminal charge and retained Mr.

4

Said, a member of the Virginia State Bar, for the specific purpose of representing him in the legal proceedings related to that charge. Thus, it is clear that the Defendant and Mr. Said had an attorney-client relationship at the time the Defendant watched the video.

But, this does not end the inquiry. Specifically, to find that the attorney-client privilege applies, the Court must determine whether Mr. Said's physical act of showing the Defendant the video and any statements the Defendant made to Mr. Said about the video qualify as "confidential communications." *In re Grand Jury Proceedings #5*, 401 F.3d at 250. The Court will take up these issues in turn.

### 1. Mr. Said's act of showing the video to the Defendant

The Government seeks to call Mr. Said as a witness to testify that he showed the video to the Defendant. As noted, the attorney-client privilege applies only to "confidential communications" between a client and an attorney. *Id.* "'[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.'" *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (quoting *Brinton v. Dept. of State*, 636 F.2d 600, 604) (D.C. Cir. 1980))); *see also United States v. DeFazio*, 89 F.2d 626, 635 (7th Cir. 1990) (holding that requiring an attorney to testify that he relayed statements made to him by an IRS agent to his client was proper because the testimony did not reveal any client confidences or legal advice that would be protected by the attorney-client privilege); *In re Grand Jury Testimony of Attorney X*, 621 F. Supp. 590, 592 (E.D.N.Y. 1985) ("Where an attorney is a mere 'conduit' the client may not

5

invoke the privilege."); 1 Thomas E. Spahn, *The Attorney-Client Privilege: A Practitioner's Guide*, at 112 (2007) (stating that an act that does not convey any protected information does not deserve protection from the attorney-client privilege).

In this case, Mr. Said obtained the video through discovery related to the state criminal charge from the Richmond Commonwealth's Attorney's Office—a source outside of Mr. Said's attorney-client relationship with the Defendant. The simple act of displaying the video to the Defendant involved no protected communication since its contents were derived from a third party. Thus, the attorney-client privilege is inapplicable and does not protect from disclosure the fact that Mr. Said showed the video to the Defendant during his representation of the Defendant in relation to the state criminal charge. Accordingly, the Court will grant the government's Motion and deny the Motion to Quash as they relate to Mr. Said's testimony that he showed the video to the Defendant.

### 2. The Defendant's Statements to Counsel

Any statements the Defendant made to Mr. Said concerning the video, however, are another issue. The purpose of the attorney-client privilege is to ensure full and frank communication between attorneys and their clients by protecting confidential communications from disclosure. *In re Grand Jury Proceedings #5*, 401 F.3d at 250 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In this case, the Government seeks to call Mr. Said as a witness to testify about statements the Defendant

6

allegedly made to him after watching the video. The Court finds that these statements are confidential communications protected from disclosure by the attorney-client privilege.

Unlike the Defendant's physical act of viewing the video, any statements by the Defendant to Mr. Said in response to watching the video fall squarely within the protection of the attorney-client privilege. Any statements the Defendant made in this context would seem to relate directly to Mr. Said's representation of the Defendant on the state criminal charge. Thus, the Defendant's alleged statements concerning the contents of the video are protected from disclosure by the attorney-client privilege.

**B.     The Crime-Fraud Exception to the Attorney-Client Privilege**

The government asserts that, even if the attorney-client privilege applies to the Defendant's statements to Mr. Said, the statements are not protected because they fall within the crime-fraud exception to the attorney-client privilege. The Court disagrees.

Although the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients, *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005), the attorney-client privilege stops short of protecting communications used by the client to further the commission of a crime or fraud. *In re Grand Jury Proceeding*, 102 F.3d 748, 750–51 (4th Cir. 1996). "Both the attorney-client and work product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings #5*, 401 F.3d at 251.

7

To trigger the application of the crime-fraud exception, the party challenging the assertion of the attorney-client privilege must make a prima facie showing that the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel. *Id.* Furthermore, it must be shown that the representation was intended to further the unlawful scheme and that the privileged communications or documents at issue bear a close relationship to the client's existing or future scheme. *Id.* In determining whether the crime-fraud exception applies, the Court must assess the client's knowledge and intentions at the time of the communication; the attorney's lack of knowledge of the illegality is irrelevant. *Id.*

The Defendant's communications to Mr. Said concerning the video do not fall within the crime-fraud exception. The Defendant retained Mr. Said for the specific purpose of representing him with respect to the state criminal charge, and Mr. Said showed him the video in connection with that representation. No evidence exists that the Defendant was engaged in or planning the offense for which he currently stands indicted at the time he retained Mr. Said or when Mr. Said showed him the video. Moreover, the government does not contend that the Defendant sought legal advice to further the federal offense for which he was subsequently indicted. Accordingly, the Court will deny the Government's Motion and grant the Motion to Quash as they relate to testimony concerning any confidential communications made by the Defendant to Mr. Said during their attorney-client relationship.

## III. CONCLUSION

For the reasons stated herein, the Court will grant the government's Motion for Judicial Determination of Attorney Client Privilege Issue and deny the Motion to Quash Government Subpoena as they relate to Mr. Said's physical act of showing the video to the Defendant. The Court will deny the government's Motion and grant the Motion to Quash as they relate to any confidential communications made by the Defendant to Mr. Said during his representation of the Defendant on the state criminal charge.

An appropriate Order will accompany this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Henry E. Hudson
　　　　　　　　　　　　　　　　United States District Judge

ENTERED this 21 day of August 2008
Richmond, VA